1815.

Chilton
vs
Jones

such ignorance does not affect the right of the defendant to retain the money for which this action is brought. But the court also refused to give this opinion and direction. The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before EARLE, JOHNSON, and MARTIN, J.

*Harper*, for the Appellant.

*Binkney* and *W. Dorsey*, for the Appellee. They referred to *Astley vs Reynolds*, 2 *Stra.* 915, 916.

THE COURT concurred with the County Court in the opinions given in all the bills of exceptions.

JUDGMENT AFFIRMED.

---

DECEMBER.                    CHILTON VS. JONES

In an action on the case on a warranty by C, that certain slaves sold to J, were sound and healthy, knowing them to be unsound, &c the evidence was, that when the slaves were about to be delivered, the agent of J said to C, do you deliver those slaves as sound? He answered, I know nothing of them; I refer you to D; I got them from him; I did not know any thing about them till now. He will deliver them. The agent then said to D, are those slaves sound. To which he replied, they are sound to the best of my knowledge. D then delivered the slaves to the agent. One of the slaves was unsound at the time they were delivered. J offered to give in evidence the declarations of D, made some time before the sale to J, for the purpose

APPEAL from *Montgomery* County Court. This was an action on the case. The declaration contained two counts—1. That on the 21st of October 1808, the defendant, (now appellant,) by his bill obligatory, promised and obliged himself to pay to the plaintiff, (now appellee,) £380 8 4. the amount to be paid off, in negroes, to be valued by two persons, as they were selling in 1807. That the defendant, in payment and discharge of the said bill, on the 31st of December 1810, did deliver to the plaintiff certain negroes, and they were delivered and valued, that is to say, a negro boy named *John* at the sum of, &c. which said negroes the defendant undertook, and then and there faithfully promised the plaintiff, were sound and healthy. That the plaintiff, in consideration thereof, delivered up the said bill obligatory. Averment, that the negroes were not sound and healthy, and that the defendant knew them not to be so, but falsely, fraudulently, and craftily, to deceive the plaintiff, did not regard his said several promises, &c. by reason whereof the said negroes were of no use and value to the plaintiff. 2. On a warranty that certain negro slaves sold, &c. were sound and healthy, knowing them to be unsound and unhealthy, &c. The defendant pleaded *non assumpsit*, and issue was joined.

of proving that he knew the slaves to be unsound before and at the time of their delivery—*Held*, that the evidence was inadmissible. *Held* also, that the circumstance that the mother of the slaves having died with the king's evil, or scrophula, was not of itself sufficient evidence of the unsoundness of any of her children, to entitle J to recover in this action.

The declaration in the *first* count stated, that C, by his bill obligatory, obliged himself to pay to J £380, the amount to be paid off in slaves to be valued, &c. That C, in discharge of the bill, did deliver certain slaves, and they were valued, &c. which slaves C undertook and promised J were sound and healthy; in consideration thereof J delivered up the bill obligatory—averment, that the slaves were not sound and healthy, and that C knew them not to be so, but falsely, &c. to deceive J. did not regard his promises, by reason whereof the slaves were of no use and value to J. The *second* count was on a warranty, that certain slaves sold, &c were sound and healthy, knowing them to be unsound and unhealthy, &c. no damages were laid in the declaration—*Held*, that on the evidence above stated J was not entitled to recover on his declaration.

1815.

Chilton
vs
Jones

1. At the trial the plaintiff offered in evidence, that the negroes were sold to him by the defendant for money due from the latter to the former; that by agreement, *R. Lyles* and *J. Sprigg* were to appraise them; that some of the negroes were at the house of *S. Davis*, and were there appraised by the said appraisers, and taken by the agent of the plaintiff at that appraisement. The plaintiff also proved, that after the negroes had been appraised, and were about to be delivered, the agent of the plaintiff said to the defendant, Do you deliver those negroes as sound? The defendant answered, I know nothing of them—I refer you to Mr. *Davis.* The plaintiff's agent then said to *Davis*, Are those negroes sound? To which he replied they are sound to the best of my knowledge, except a burn on one of them, which he showed. *Davis* then delivered the negroes to the agent of the plaintiff. The plaintiff further proved, by another witness, that when the agent of the plaintiff asked the defendant if he delivered the negroes as sound, he replied, Mr. *Davis* will deliver them—I got them from him—I did not know any thing about them till now. The witness further stated, that it pressed upon his mind that the defendant said to the agent of the plaintiff something amounting to this—That he delivered the negroes through Mr. *Davis.* The plaintiff further offered in evidence, that the defendant had said that *Davis* was to furnish negroes to pay a debt due to the plaintiff. The plaintiff also offered in evidence, that one of the negroes above mentioned, was unsound at the time they were delivered. The plaintiff then offered to give in evidence, declarations of the said *Davis*, made some time before the sale to the plaintiff, for the purpose of proving that he knew the negroes in question to be unsound before they were agreed to be taken as above stated, and at the time of their delivery. The plaintiff further offered in evidence, that a memorandum of the names and prices of the negroes so appraised, was given by *Davis* to the plaintiff's agent, who gave it to the attorney for the plaintiff, who copied it exactly in the declaration, and lost the said memorandum. To the admission of which evidence the defendant objected; but the court, [*Harwood* and *Ridgely*, A. J.] were of opinion, that the evidence was admissible, and permitted it to go to the jury. The defendant excepted.

2. The plaintiff then offered in evidence, that the mother of the negroes in question was severely afflicted, and died with the scrophula, and that the witness, who was the family physician of *Davis*, had told him the disorder was hereditary, and that he would not have any of the children; but the witness never knew of any of the negroes in question being sick while in the possession of *Davis*, and never heard *Davis* say they were. The defendant then offered in evidence, by *J Sprigg*, one of the appraisers, that some time on the day the negroes were so appraised and

delivered, *Davis* said in the presence and hearing of the plaintiff's agent, that they were motherless children, and he parted from them on that account; and to the best of the witness's knowledge added, that the mother had died with the king's evil, or scrophula. One of the appraisers, at the time of appraising them, knew they were the children of a woman who had died with the scrophula or king's evil, and the other appraiser heard it on the same day, and made no alteration in his appraisement. The appraiser who knew it, did not know it was an hereditary disease, and the other appraiser now considered that it would have made a difference in the valuation if he had known it. The plaintiff proved by two physicians, Doctor *Lyles*, one of the appraisers, and Doctor *Brewer*, that the king's evil was an hereditary disease, and that the children of a parent so diseased, could not, with propriety, be appraised or valued as sound negroes, even though the disease might not have appeared upon them. The defendant then prayed the opinion of the court to the jury, that the circumstance of the mother of the children in question having died with the king's evil, or scrophula, is not of itself sufficient evidence of the unsoundness of any of her children, to entitle the plaintiff to recover in this action; which instruction the court refused to give; but were of opinion, and so directed the jury, that if they believed that at the time of the appraisement and delivery, the negro children were affected, or might be affected, with a latent disease, and that they were not so valuable as if descended from an healthy mother not afflicted with the scrophula, the plaintiff is entitled to recover damages on account of them, although the said latent disease may not have appeared on, at or since, the said delivery. The defendant excepted.

3. The defendant then prayed the opinion of the court, that upon the evidence stated, the plaintiff is not entitled to recover on his declaration. Which opinion the court refused to give. The defendant excepted; and the verdict and judgment being against him, he prosecuted this appeal.

The cause was argued before CHASE, Ch. J. and NICHOLSON, EARLE, JOHNSON, and MARTIN, J.

*Taney*, for the Appellant, contended, 1. That the declarations of *Davis*, stated in the *first* bill of exceptions, made when he was not the agent of the defendant, ought not to have been received as evidence. It is not stated that *Davis* was present; and as he had no authority at that time to act for the defendant, his declarations could not be evidence to charge the defendant.

2. It was assumed by the court below, in the *second* bill of exceptions, that *Davis* had a right to bind the defendant by a warranty of the soundness of the negroes. The war-

ranty, if made, was that the negroes were sound at the time of their delivery, and not that they were descended from healthy parents. If there was no actual existing disease, the contract was complied with. 2 *Com. on Cont.* 266, 267, cites *Parkinson vs. Lee,* 2 *East,* 314. The court below, by refusing the defendant's prayer, decided, that if the mother was afflicted with, and died of the king's evil, it was sufficient evidence of the unsoundness of the children; and they declared, that if the children *might be affected* with a latent disease, at a *future period,* then the plaintiff might recover. It is denied that the warranty of *Davis* could bind the defendant; and it is contended that the sale was made by the defendant himself. There is nothing in the case which shows that *Davis* was the agent of the defendant. *Pasley vs. Freeman,* 3 *T. R.* 52. The action should have been brought against *Davis.* The plaintiff was referred to him; for the defendant expressly said he knew nothing of the negroes. The opinion of the court below was founded upon a warranty, and not upon a fraud. A mere opinion expressed, is no warranty. If it was intended as an affirmance of the fact, then it might be a warranty. *Ibid.* 57.

3. There are two counts in the declaration. The *first* is on a special contract, and there was no evidence given to prove it; the prayer in the *third* bill of exceptions, that the plaintiff could not recover on it, ought to have been granted. The *second* count is on a warranty that the negroes were sound. There is no consideration stated for the warranty. The sums of money for which the negroes were sold are stated, but it is not said they were paid for. Every declaration should state a sufficient consideration upon which to ground the *assumpsit.* 1 *Chitty's Plead.* 295.

4. The verdict and judgment are for damages; but there are no damages laid in the declaration. It is not necessary to cite authorities to show that this is fatal.

THE COURT dissented from the opinions of the County Court in all the bills of exceptions.

JUDGMENT REVERSED.